OPINION
This accelerated calendar case emanates from a judgment of the Portage County Court of Common Pleas, reversing a decision of appellant, the Mantua Township Board of Zoning Appeals ("the BZA").[1]
In early 1996, appellee, Blue Stone Sand Gravel ("Blue Stone"), purchased an 86.5 acre tract of land, which was located in an R-2 residential zoning district, in Mantua Township. In the immediate vicinity of the Blue Stone parcel were several sand and gravel mining operations and approximately seventeen residential dwellings and/or agricultural operations.
In Mantua Township, R-2 districts consist of "moderate density, large lot, residential development[s]." Permitted uses within R-2 districts are single- and dual- family dwellings, travel trailers owned by residents of the inhabited dwelling, and accessories and signs "customarily incident to the primary use." Aside from these uses, certain "conditionally permissible uses" are allowed in R-2 districts, which require prior approval by the BZA, including sand and gravel mining operations.
Soon after it purchased the lot, Blue Stone sought a zoning certificate from the Mantua Township Zoning Inspector to mine sand and gravel on its parcel. The inspector denied Blue Stone's request for a zoning certificate because the sand and gravel mining operation did not fall into the category of automatically permitted uses in the R-2 district. The inspector instructed Blue Stone to apply for a conditional zoning certificate,[2] which it did.
The BZA held three public hearings on Blue Stone's application for a conditional zoning permit. At the first hearing, Blue Stone, through its attorney, presented its plan for mining and reclaiming the land; the mining operations would continue for no longer than sixteen years, after which the reclamation process would begin. Blue Stone's plan for reclaiming the property included a combination of regrading and constructing man- made ponds ("impondments"). At the successive hearings, Blue Stone altered its mining and reclamation plans to correct inaccuracies in the initial application and to address concerns presented by adjacent landowners.
During each of the three hearings, adjacent landowners gave sworn testimony detailing their "concerns" about allowing another mining operation in their neighborhood, which included increased traffic congestion, noise and dirt, and decreased property values and well-water levels. Some of the landowners conducted their own analyses of Blue Stone's application and drew conclusions regarding what they considered to be the actual length of the operation in light of the figures contained in Blue Stone's application, in addition to the "inevitable" decrease in property values. The BZA elicited letters from various professionals regarding the effect a mining operation would have on property values in general, the possible affect this operation would have on local septic systems, wells and traffic patterns, and the types of permits Blue Stone would need from the EPA and other environmental concerns to conduct its mining operation. None of these professionals attended the hearings or were subject to cross-examination by Blue Stone's attorney.
At the conclusion of the third hearing, the BZA denied Blue Stone's application for a conditional use permit. Its basis for doing so was presented in its "Conclusions of Fact":
 "Based on the information presented to the Board of Zoning Appeals, the Board denied the Conditional Zoning Certificate for Blue Stone Sand Gravel, on the bases of all exhibits, all testimony; professional, community residents, neighbors and Mantua Township Zoning Resolution, specifically 801-2, page 49.
 "Section 801-2 of the Mantua Township Zoning and Basis of Determination.
 "The Board of Zoning Appeals could not establish beyond a reasonable doubt that the general standards and the specific standards pertinent to each use indicated herein could be satisfied by the completion and operation of the proposed development and;
 "801-2-A General Standard #2, 3, 4, 5, 7, 10 and 11 could not be met by Blue Stone Sand Gravel beyond a reasonable doubt of the Board of Zoning Appeals." (Emphasis added.)
Blue Stone appealed the BZA's decision to the Portage County Court of Common Pleas. Apparently without conducting a hearing, the court reversed the BZA's determination on the ground that it used the wrong standard of proof in reaching its decision to deny Blue Stone's application. In its judgment entry, the court concluded sua sponte that the BZA should only have imposed a preponderance standard upon Blue Stone's application, even though the zoning resolution required that all general and specific requirements be proved beyond a reasonable doubt before a conditional zoning permit may be issued.[3] The court did not declare the zoning resolution unconstitutional because it imposed this standard of proof; it merely substituted what it considered to be the correct standard of proof for the standard contained in the language of the resolution. After concluding the BZA utilized an incorrect standard of proof, the trial court weighed the evidence presented to the BZA and concluded Blue Stone was entitled to a conditional use permit under the preponderance standard. The court then ordered the BZA to issue the permit with certain conditions. The BZA appealed this decision, asserting the following as error:
 1. The trial court erred by invalidating the standard of proof in the Zoning Resolution and imposing a lesser standard, then reversing the Board's decision based on such standard.
 2. "The trial court erred in reversing the Board's decision by substituting its judgment for that of the Board."
By its first assignment of error, the BZA contends the trial court exceeded its authority by essentially re-writing the township's zoning resolution, substituting a preponderance standard of proof for the standard of proof contained in the language of the resolution, "beyond reasonable doubt." We agree.
R.C. 519.02 contains the General Assembly's delegation of legislative power to the township trustees to promulgate regulations regarding the zoning of property within the township.Tuber v. Perkins (1966), 6 Ohio St.2d 155, 157. It states, in pertinent part:
 "For the purpose of promoting the public health, safety, and morals, the board of township trustees may[,] in accordance with a comprehensive plan[,] regulate by resolution, the location [of structures] * * * [and] the uses of land * * *, and * * * may divide all or any part of the unincorporated territory of the township into districts or zones * * *."
In implementing this power, the board of township trustees is required to establish a township zoning commission that will draft a comprehensive plan for recommendation or certification to the board of trustees.[4] R.C. 519.04, 519.05 and 519.07. After the plan has been certified by the zoning commission and after a public hearing has been held, R.C. 519.08, the board of trustees must vote on the adoption of the plan, R.C. 519.10. If the board of trustees adopts the plan, including the zoning resolution, it will be submitted to the electors in the township for approval or rejection. R.C. 519.11. If the voters in the township approve the plan and resolution, any amendments or alterations thereto must go through the same process. R.C. 519.12.
In this case, the residents of Mantua Township approved of the zoning resolution adopted by the board of township trustees. Included in the resolution, adopted by the people, was a provision regarding "conditionally permissible uses" for named uses not automatically allowed in R-2 districts. The resolution provides that, to obtain a conditional use permit, an applicant must prove "beyond reasonable doubt" that it can meet the general and specific requirements contained in sections 801 and 802 of the zoning resolution. R.C. Chapter 519 does not require a township to provide for conditional use permits; they are discretionary with the township. R.C. 519.14(C). If the township and its voters decide to provide for these special permits, the township is required to set the standards for the permit that do not violate the Constitution or any established state law. See Gerzeny v.Richfield Twp. (1980), 62 Ohio St.2d 339.
We have uncovered no constitutional or statutory provision that precludes Mantua Township from imposing the standard of proof "beyond reasonable doubt" to conditional zoning certificates. Such an elevated standard of proof is unusual in a civil context, but does not contravene the Constitution, including due process,[5] or any law of this state.[6] As such, the trial court in this case erred in declaring the standard of proof contained in Article VII of the Mantua Township Zoning Resolution incorrect on any grounds.
Additionally, the trial court overstepped its statutory authority in reviewing the decision of a board of zoning appeals. R.C. 2506.04 provides that, in reviewing the decision of an administrative agency, such as the board of zoning appeals,
 "[t]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court."
Because the trial court sits as an appellate court in these matters, it is permitted to review the decision of the administrative agency for error, either in legal analysis or factual findings. Dudukovich v. Lorain Metro. Housing Auth.
(1979), 58 Ohio St.2d 202, 207. It is permitted to weigh the evidence, but is also bound by the axiom that decisions from administrative agencies carry with them a strong presumption of validity. Community Concerned Citizens, Inc. v. Union Twp. Bd. ofZoning Appeals (1993), 66 Ohio St.3d 452, 456. Here, the court did not confine its review to that mandated by the statute. Instead, the court sua sponte re-wrote a validly adopted resolution.[7] As appellant correctly argues, the court mistakenly substituted the appropriate standard of review in administrative appeals for the adopted standard of proof.[8]
The court was also in error when it altered the language of the resolution by substituting a different standard of proof, because the enactment and amendment of zoning regulations is a legislative
function outside the power of the judiciary. See Tuber, 6 Ohio St.2d 155
and Union Oil Co. of California v. Worthington (1980),62 Ohio St.2d 263, 266 ("The choice between various reasonable alternatives is best left to the legislative body, rather than being usurped by the judiciary."). Had the court possessed grounds upon which to invalidate the zoning resolution, which we have concluded it did not, the proper procedure, upon concluding the resolution was incorrect, would have been to declare it so and leave the amendment process to the township and its citizens under R.C. Chapter 519.
On a procedural level, the court was not permitted to invalidate the resolution or any of its provisions on its face in an appeal from a decision of the BZA denying a permit application. A resolution can only be attacked on its face in a declaratory judgment action. Community Concerned Citizens,66 Ohio St.3d at 453. Appeal from a decision of the BZA, only an attack on the resolution as applied to the parties is permissible. Id.
The assignment of error is sustained.
By its second assignment of error, the BZA contends the trial court erred in substituting its judgment for that of the board. Again, we agree.
The power to issue a conditional zoning certificate is reposed with the BZA. R.C. 519.14(C). Upon review, the court of common pleas is constrained to consider whether the decision to grant or deny that certificate is supported by the preponderance of substantial, reliable and probative evidence. R.C. 2506.04. The trial court, as the reviewing court, is not permitted to substitute its judgment for that of the BZA, but must give due deference to the board and engage in the presumption of correctness. Dudukovich, 58 Ohio St.2d at 207. The statute does not give the court the power to conduct a de novo review after it decided the wrong standard of proof was applied. Id. Upon concluding that the BZA used the wrong standard of proof, the court should have reversed the decision and remanded the issue to the BZA for reconsideration of its decision in light of the "correct" standard of proof.
The assignment of error is with merit.
In accordance with the foregoing, the decision of the Portage County Court of Common Pleas is reversed and the cause is remanded for further proceedings not inconsistent with this opinion. Upon remand, the court is instructed to review the determination of the BZA in light of the standard of proof established by the resolution, beyond reasonable doubt. The inquiry the court is to resolve is whether the preponderance of substantial, reliable and probative evidence supports the BZA's decision that Blue Stone failed to prove beyond a reasonable doubt it could meet the general and specific requirements necessary for a conditional zoning certificate. We caution the court to conduct its review with the appropriate level of deference to the BZA's decision, including the consideration that the area is unable to accomodate another sand and gravel operation no matter how cooperative the applicant is. Merely because Blue Stone is willing to meet all specific standards which may be imposed upon it does not make the grant of a conditional use permit automatic. Community ConcernedCitizens, supra. The Mantua Township zoning resolution also requires the BZA to consider the general standards established in Section 801-2 such as the effect this sand and gravel operation
will have upon the immediate vicinity. On remand, we also direct the court's attention to our decision in Adelman Real Estate Co.v. Gabanic, (1996), 109 Ohio App.3d 689, regarding the proper "evidence" to consider in its review.
ROBERT A. NADER, PRESIDING JUDGE.
O'NEILL, J., and CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] Upon review of the record, we found that the caption of the notice of appeal filed in the common pleas court mislabeled the township's Board of Zoning Appeals as the "Zoning Board of Appeals." For the purposes of this appeal, we will refer to the appellant with its correct legal name.
[2] The terms "conditional zoning certificate," "conditional zoning permit" and "conditional use permit" are synonymous and will be used interchangeably throughout this opinion.
[3] Although Blue Stone's brief to the trial court contained a vague reference to the fact that the BZA "attempted to hold [Blue Stone] to a burden of proof `beyond reasonable doubt,'" no request was made to alter or declare invalid this zoning resolution.
[4] Before the zoning commission may certify its recommendations to the board of trustees, it must hold at least one public hearing. R.C. 519.06.
[5] Because Blue Stone is not entitled to a conditional use permit, R.C. 519.14(C), it cannot claim it was denied substantive due process by the township's imposition of such a high standard of proof.
[6] We have uncovered several cases in which a township or city has enacted regulations for obtaining either a conditional use permit or a variance using the "beyond reasonable doubt" standard of proof. See Rothstein v. Athens City Bd. of Zoning Appeals (Feb. 6, 1995), Athens App. No. 94CA1611, unreported, 1995 Ohio App. LEXIS 534; Collins v. Butler Cty. Bd. ofZoning Appeals (Nov. 24, 1986), Butler App. No. CA86-01-001, unreported, 1986 Ohio App. LEXIS 9227;Hickey v. Shelter (Nov. 10, 1976), Medina App. No. 654, unreported, 1976 Ohio App. LEXIS 6206. In these cases, no challenge was made to and no mention was made regarding the validity of the standard. We have found no case invalidating the "beyond reasonable doubt" standard of proof under these circumstances.
[7] We also find procedural due process problems with the court's actions in this case. It should have given the parties notice of its intention to consider the issue and the opportunity to submit briefs before reversing the BZA's decision on grounds not asserted by the parties.
[8] The trial court's actions in this case are akin to an appellate court substituting its standard of review, either abuse of discretion or denovo, for a trial court's standard of proof, such as preponderance or clear and convincing evidence.